

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EN:AH/JD/KM
F.#2010R02047

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

December 16, 2011

By ECF

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>     Re:  United States v. Anthony Romanello
>          10 Cr. 929 (S-1) (ILG)

Dear Judge Glasser:

    The government respectfully submits this letter in reply to the defendant Anthony Romanello's response dated December 14, 2011 ("Def's Resp.") to the government's motions in limine (1) to preclude the defendant from making certain arguments regarding the motivation of the government and law enforcement in commencing this prosecution, see Government's Nov. 27, 2011 letter re: vindictiveness ("First Nov. 27 Letter") and (2) to permit the government to introduce at trial consensual recordings in which a cooperating witness ("CW#1") discusses various schemes associated with a cement business called Queensboro, which was used by both the Genovese and Gambino crime families, including the defendant, as a vehicle to perpetuate various frauds in furtherance of organized crime, see Government's November 27, 2011 letter re: co-conspirator statements ("Second Nov. 27 Letter").  The defendant also incorrectly suggests that the government has improperly "amend[ed]" the indictment in seeking to admit these co-conspirator statements.  For the reasons set forth in the government's previous submissions and below, the government's applications should be granted.

I.  **The Defendant Should be Precluded From Asserting Prosecutorial Vindictiveness Through the Guise of Cross-Examining Government Agents for Bias**

In opposing the government's motion *in limine* to preclude certain arguments to the jury, the defendant does not dispute that arguments concerning alleged prosecutorial vindictiveness, selective prosecution, and improper personal motives on the part of prosecutors or law enforcement agents – like those made in the *Antico* trial – are improper and will not be made during this trial. Def's Resp. at 2. Despite the defendant's assertion that he will not pursue such arguments, however, the defendant nevertheless argues that he should be able to make these same types of arguments during cross-examination of government witnesses under the guise of exploring "bias." *Id.* at 2-5. For example, the defendant contends that he should be able to question government agents about whether their decision to arrest the defendant was motivated by the "enormous publicity and job-related benefits" of prosecuting "Mafia figures." *Id.* at 5. This is a classic selective prosecution argument, the preclusion of which cannot be avoided by "conflat[ing] the concepts of witness bias and selective prosecution." *United States v. Abboud*, 438 F.3d 554, 580 (6th Cir. 2006) (finding no error in the district court's preclusion of questions during cross examination concerning "bias" that were designed to suggest that the government pursued charges against the defendant because of his "ethnicity"). The law is clear that these issues are reserved for the Court and may not be presented to the jury in any form, including cross examination. *See* First Nov. 27 Letter at 3-4; *United States v. Stewart*, 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (precluding cross examination designed to elicit evidence of prosecutorial bias).

II.  **The Admission of the Requested Co-conspirator Statements Is Proper under Federal Rule of Evidence 801(d)(2)(E)**

The defendant asserts that the consensual recordings detailed in the Second Nov. 27 Letter and attached thereto are not admissible as co-conspirator statements because "the speaker and the defendant were not jointly engaged in the criminal venture that was being advanced by the speaker," as required by Federal Rule of Evidence ("Rule") 801(d)(2)(E) and *United States v. Russo*, 302 F.3d 37 (2d Cir. 2002).[1] *See* Def's Resp. at 7-8.

---

[1]  Notably, the defendant does not address the government's additional argument that many of the consensual recordings, specifically those in which the co-conspirators reference their involvement in illegal activities, are admissible pursuant to Rule 804(b)(3) because they are, in effect,

Specifically, the defendant states that while Vito Napolitano, a Genovese associate who appears on one recording, is "arguably . . . a co-conspirator of [the] defendant," others, such as Queensboro employee Steve Casper and John Sowulski, who was associated with the Gambino family, cannot be co-conspirators. Id. at 8.  The defendant's argument is based on the faulty premise that the defendant can only be a co-conspirator of other Genovese family associates and members, such as Napolitano, and not of others who may be associated with a separate crime family. The government is not arguing that the recordings are admissible because Napolitano and the defendant were co-conspirators by virtue of their joint affiliation with the Genovese family. Rather, the evidence shows that the defendant, Napolitano, Casper, Sowulski, and others were co-conspirators with respect to the specific criminal objective to use Queensboro as a vehicle to perpetuate various frauds in furtherance of organized crime.[2] See United States v. Stratton, 779 F.2d 820, 829 (2d Cir. 1985) (holding that the government may seek to introduce statements in furtherance of an uncharged conspiracy so long as the conspiracy is "factually intertwined" with the offense being charged). Moreover, the conspiracy to use Queensboro for illicit purposes is integrally related to, and inextricably intertwined with, both the racketeering conspiracy charged in Count One and also the defendant's extortion of Napolitano charged in Racketeering Act Three, in that it provides evidence of the context and motivation for the defendant's extortion of Napolitano, as detailed further below.  The recordings are thus admissible.

> III. The Admission of the Co-Conspirator Statements Does Not Constitute an Improper Amendment of the Indictment

The defendant also moves to preclude admission of the co-conspirator statements on the ground that they amount to an improper amendment of the indictment returned by the grand jury. See Def's Resp. at 6-7).  That argument is factually inaccurate and legally unavailing.

As an intial matter, "an indictment returned by a legally constituted and unbiased grand jury, . . . if valid on

---

admissions subjecting those co-conspirators to civil or criminal liability.  See Second Nov. 27 Letter at 11.

[2]    Further, the person to whom the statement is made – in this case CW#1 – need not be a co-conspirator, so long as the statements were meant to prompt the listener to respond in a way that promoted or facilitated the goals of the conspiracy.  See United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1199 (2d Cir. 1987).

its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956). As detailed in the government's prior submissions in response to the defendant's various motions regarding sufficiency of the evidence, the law does not require the government to particularize every facet of its proof at the pleading stage. The indictment originally returned by the grand jury, coupled with materials provided in discovery and in response to the demand for a bill of particulars, made plain the government's theory, which has remained consistent: the defendant and others conspired to extort "Vito" in relation to money he had taken from the defendant and that extortion was evidenced by a June 5, 1999 intercept of the defendant at his gambling club in which the defendant explains his plan to "go to Vito's" and to "punch [Vito] around" for "taking the money."[3] The co-conspirator statements detailed in the Second Nov. 27 Letter do not alter that theory in any fashion; rather, the government's subsequent disclosures to defense counsel simply made clear to the defendant that "Vito" was Vito Napolitano.

Rather than "amending" Racketeering Act Three (as the defendant suggests), the recordings concerning Queensboro provide background and context to the evidence that proves the defendant and others conspired to extort Napolitano under threat of violence due to monies Napolitano had taken from the defendant. Specifically, the recordings reveal that in and around June 1999, various co-conspirators discussed Napolitano's theft of monies from Queensboro, and therefore the defendant. This highly specific evidence gives context – and provides a motive – to the defendant's assertions on the June 5, 1999 intercept. The defendant's request for a hearing, or any other relief on this issue, should therefore be denied.

Finally, the admission of the co-conspirator statements does not offend Rule 403. The probative value of these statements is clear: without them, the June 5, 1999 interception in which the defendant explains his plan to "go to Vito's" and to "punch [Napolitano] around" for "taking the money" appears to come out of the proverbial blue sky. On the other hand, provided with the relevant context, the jury will understand that the defendant was angry that, as result of Napolitano "skimming," or "taking the money," from Queensboro, the defendant and the

---

[3] Moreover, although defense counsel appears to have assumed that Racketeering Act Three concerned the collection of a gambling debt, the government has never suggested nor asserted that the extortion involved gambling.

4

Genovese family lost their control of Queensboro – and their ability to use Queensboro for illicit financial gain – to the Gambino family, thus motivating the defendant's desire to "punch [Napolitano] around."  Moreover, the prejudicial value of this evidence is slight as it involves conversations regarding financial crimes like double-billing and the use of "no-show" employees that pale in comparison to the defendant's own exortations to others to physically assault Napolitano.

* * * *

Therefore, for the reasons set forth in each of the government's submissions, this Court should grant the government's applications.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: /s/ Amanda Hector
Amanda Hector
Jack Dennehy
Kristin Mace
Assistant United States Attorneys
(718) 254-6212

cc:   Gerald McMahon, Esq. (via ECF)
      Mathew Mari, Esq. (via ECF)

5