

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

EN:AH/KM
F.#2010R02047

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 13, 2012

<u>By Email</u>

John L. Almanza
United States Probation Officer
Eastern District of New York
147 Pierrepont Street
Brooklyn, New York 11201

> Re:  United States v. Anthony Romanello
> <u>10 Cr. 929 (S-1) (ILG)</u>

Dear Officer Almanza:

The government respectfully submits this letter in response to the defendant Anthony Romanello's objections to the Presentence Report ("PSR") dated April 14, 2012 ("Def's Ltr."). For the reasons stated below, the government disagrees with the defendant's objections.

<u>BACKGROUND</u>

As noted in the PSR, the government and the defendant entered a plea agreement in this case pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure (the "Agreement"). Pursuant to the terms of the Agreement, the government agreed to recommend that the defendant be sentenced within a range of 10 to 16 months' imprisonment. PSR ¶ 3; <u>see also</u> Agreement ¶ 2. The Agreement, however, is not binding on the Probation Department or the Court, and does not bear upon the correctly calculated Guidelines range applicable to the defendant. <u>See</u> Agreement ¶ 3.

<u>RESPONSE TO DEFENDANT'S OBJECTIONS</u>

The government addresses the various objections raised by defense counsel by category below:

A.   <u>Paragraphs 5 - 16</u>

The defendant states that paragraphs 5 through 16 of the PSR contain historical information concerning the Genovese crime family that is inapplicable to the defendant because he "did not allocute to being a member of the Genovese Family, but [instead] admitted committing Racketeering Acts Two and Three as part of, and in furtherance of, an associated-in-fact enterprise."  Def's Ltr. at 1.  The information in paragraphs 5 through 16 is relevant to the crime to which the defendant pleaded guilty and thus properly part of the PSR.  Moreover, the defendant's assertion is contradicted by the plea colloquy, in which the defendant admitted his association with the Genovese crime family.

Prior to taking the defendant's plea allocution on January 10, 2012, the Court stated as follows:

> I'm going to be referring to the enterprise as I go through what it is the government would have to prove, and when I say the enterprise, what I'm referring to Mr. Romanello . . . is essentially the Genovese family which has been charged as being the enterprise . . . .  So, between January of 1990 and July of 2006, the government would have to prove that you were associated with that enterprise.  The government would have to prove that that enterprise, the Genovese family, had an ongoing formal or informal structure that was defined in the first 10 or 11 paragraphs of the indictment: the boss, the underboss and captains and crews and all the rest.  The government would have to prove all that.  The government would have to prove that your association with that enterprise was meaningful, that you were helpful to it, you knew what it was about, you were helpful in continuing and furthering the objectives of the enterprise as an associate of it.

Transcript of Plea Hearing ("Tr.") at 24-25, attached hereto. After having thus defined the "enterprise" as the Genovese crime

family, the following colloquy took place between the Court and
the defendant:

> Court:      Let me ask you, Mr. Romanello.  I'm
>             using the word "enterprise."  Were you
>             associated with that enterprise that I
>             have defined for you sometime between
>             1990 and 2006?
>
> Romanello: Yes, Your Honor.

Tr. at 26-27.

### B.   Paragraphs 2, 18 - 21

The defendant objects to the language in the PSR
identifying the victim of Racketeering Act Three as "Vito
Napolitano," arguing, as he did prior to entering his plea, that
the victim of the extortion was someone else.  Def's Ltr. at 1.
The PSR accurately reflects the proof the government was prepared
to present at trial with respect to this racketeering act.
Further, the government notes that at the outset of the
defendant's plea hearing, defense counsel stated that the
defendant was "going to allocute to a no name victim."  Tr. at 4.
The Court then asked: "What I understand from Mr. McMahon, he is
going to be allocuting to Racketeering Act Three to John Doe and
not to Vito Napolitano, is that the idea?"  Id.  The government
responded: "That is the idea."  Id.  Thereafter, the Court
summarized the allegations in Racketeering Act Three, identifying
the victim as "somebody who was known to the grand jury as John
Doe No. 2," after which the defendant answered "Yes" when asked
if the Court had accurately summarized the crime the defendant
and one or more others agreed to commit.  Id. at 27-28.

### C.   Paragraphs 22, 23, 26, 45-50, 52, 55, 56, 57, 58, 60

The defendant objects to the inclusion of Racketeering
Act One (as to which he did not plead guilty) as relevant conduct
for purposes of the calculation of his applicable Guidelines
range.  Under the Sentencing Guidelines, however, the Court must
consider all relevant conduct, whether or not it resulted in a
conviction, in order to arrive at the applicable Guidelines
range.  See U.S.S.G. § 1B1.3.  Conduct relevant to a racketeering
conviction includes all conduct reasonably foreseeable to the
defendant in furtherance of the racketeering enterprise.  See
United States v. Ruggiero, 100 F.3d 284, 292 (2d  Cir. 1996);
United States v. Ayala, 75 F. Supp. 2d 126, 129-30 (S.D.N.Y.
1999); see, e.g., United States v. Upshaw, 114 Fed. Appx. 692
(6th Cir. 2004) ("[I]n calculating the base offense level for a
RICO conspiracy conviction under the Sentencing Guidelines,

underlying racketeering activity is relevant conduct for the purposes of the sentencing guidelines and need only be proven by a preponderance of the evidence.").  It was, therefore, not error for the Probation department to include the conduct underlying Racketeering Act One in the Guidelines calculation.

     D.   <u>Paragraph 73</u>

     The defendant states that his sentence of conditional discharge on July 14, 1980 for operating a motor vehicle while impaired by alcohol in violation of New York law should not be counted toward his criminal history category because it was imposed more than ten years before the commencement of the instant offense.  Def's Ltr. at 2; <u>see</u> U.S.S.G. § 4A1.1(b), application note 2.  Because the defendant pled guilty to having conducted and participated in the affairs of the Genovese crime family between January 1990 and July 2006, however, the defendant's sentence on July 14, 1980 is properly counted because it was "imposed within ten years of the defendant's commencement of the instant offense."  <u>See</u> U.S.S.G § 4A1.2(e)(2).

<u>CONCLUSION</u>

     For the reasons set forth above, the government disagrees with the defendant's stated objections.  The government also stands by its agreement to recommend that the defendant be sentenced within a range of 10 to 16 months' imprisonment.  <u>See</u> Agreement ¶ 2.

                    Respectfully submitted,

                    LORETTA E. LYNCH
                    United States Attorney

            By:  <u>/s/ Amanda Hector            </u>
                 Amanda Hector
                 Kristin Mace
                 Jack Dennehy
                 Assistant United States Attorneys
                 (718) 254-6212

cc:  Hon. I. Leo Glasser (via ECF)
     Gerald McMahon, Esq. (via ECF)
     Mathew Mari, Esq. (via ECF)

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - -   X

UNITED STATES OF AMERICA,    :   10-CR-929

        Plaintiff,        :

    -against-            :   United States Courthouse
                            Brooklyn, New York
ANTHONY ROMANELLO,           :

                        January 10, 2012
        Defendant.        :   10:30 o'clock a.m.

- - - - - - - - - - - -   X

TRANSCRIPT OF PLEA
BEFORE THE HONORABLE I. LEO GLASSER
UNITED STATES SENIOR DISTRICT JUDGE.

APPEARANCES:

For the Government:          LORETTA E. LYNCH
                            United States Attorney
                            BY: AMANDA HECTOR
                                M. KRISTIN MACE
                                JACK DENNEHY
                            Assistant United States Attorneys
                            271 Cadman Plaza East
                            Brooklyn, New York

For the Defendant:           GERALD McMAHON
                            26 Broadway - 18th Floor
                            New York, New York  10004

                            MATHEW J. MARI
                            110 Wall Street - 11th Floor
                            New York, New York  10005

Court Reporter:              Charleane M. Heading
                            225 Cadman Plaza East
                            Brooklyn, New York
                            (718) 613-2643

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

CMH      OCR      RMR      CRR      FCRR

Proceeding                                          2

1        THE CLERK:  This is criminal cause for pleading.

2   Docket number 10-CR-99, USA versus Anthony Romanello.

3        Counsel, please state your name for the record.

4        MS. HECTOR:  Good morning, Your Honor.  Amanda

5   Hector and Kristin Mace for the government.

6        THE COURT:  Good morning.

7        MR. MCMAHON:  Good afternoon.  Gerald McMahon and

8   Matthew Macri for the defendant who is present here today.

9        THE COURT:  Good morning.

10       MR. MCMAHON:  Your Honor, I first would like to

11   thank the government for having an open mind through this

12   lengthy process that has enabled us to arrive at the point

13   where we are today.

14       We have a written plea agreement which, along with

15   an allocution, if both are acceptable to the Court, will

16   result in a resolution of this case.

17       MS. HECTOR:  That's correct, Your Honor.  In light

18   of recent developments including the health concerns

19   associated with the critical witness for the government, we

20   have arrived at a plea agreement in this case.

21       THE COURT:  I just had two, not questions, but

22   observations with respect to the plea agreement, a copy of

23   which was e-mailed to me.

24       MR. MCMAHON:  Your Honor, I think it changed after

25   it was initially sent out.

Proceeding                                              3

1          MS. HECTOR:  There were a few slight changes, tweaks

2    that occurred last night between the parties.  I have a new

3    copy.

4          THE COURT:  Do you want to tell me what they are?

5          MS. HECTOR:  Yes.  The appeal waiver.

6          THE COURT:  That's paragraph four?

7          MS. HECTOR:  Paragraph four.  It's 24 months or

8    below.

9          THE COURT:  All right.

10          MS. HECTOR:  The -- I'm sorry.  If you go back one

11    page on page three, at the bottom of the page where our office

12    has new, brand new, what's now going to be standard language

13    in our plea agreements about the allocution, that the

14    defendant is entitled to the third point if he pleads guilty

15    today, assuming, and it adds a little language about the

16    allocution being acceptable to the government.

17          THE COURT:  All right.

18          MS. HECTOR:  Okay?  With respect to the coverage

19    paragraph, paragraph 5A, we've clarified that the racketeering

20    acts that are included in this indictment, that this plea does

21    not bar their use as a basis for a sentencing enhancement.

22          MR. MCMAHON:  But we took out that it cannot be used

23    for predicate acts.

24          THE COURT:  I'm just wondering about the accuracy of

25    5A, the office is agreeing not to bring further criminal

Proceeding 4

1  charges with respect to Racketeering Act Three to which I

2  understand is going to be allocuted this morning, is that

3  right?

4            MR. MCMAHON:  Racketeering Three, Your Honor, we

5  were going to allocute to a no name victim.

6            MS. HECTOR:  The allocution will be to Racketeering

7  Acts Two and Three.

8            THE COURT:  I understand that, but he's pleading to

9  Racketeering Act Three this morning, isn't he --

10            MS. HECTOR:  Yes.

11            THE COURT:  -- as one of the racketeering acts?

12            MS. HECTOR:  Yes.

13            THE COURT:  So you are agreeing to bring no further

14  charges with respect to Racketeering Act Three to which he is

15  pleading this morning?

16            MS. HECTOR:  Yes.

17            THE COURT:  As I understand it?

18            MS. HECTOR:  Yes.

19            THE COURT:  I'm trying to understand that.

20            What I understand from Mr. McMahon, he is going to

21  be allocuting to Racketeering Act Three to John Doe and not to

22  Vito Napolitano, is that the idea?

23            MS. HECTOR:  That is the idea.

24            THE COURT:  So you are agreeing not to bring any

25  further proceeding with respect to extortion against Vito

```
                        Proceeding                        5
```

1   Napolitano?

2           MR. MCMAHON:  Yes.

3           MS. HECTOR:  Yes.

4           MR. MCMAHON:  And the whole Queensboro incident.

5           THE COURT:  Okay.

6           MS. HECTOR:  And then the only other change, Your

7   Honor, is if you flip back to page four.

8           THE COURT:  Before I get to that --

9           MS. HECTOR:  Yes, sir.

10          THE COURT:  -- as I understand it, this is going to

11  be an 11(c)(1)(B) plea, is that right?

12          MS. HECTOR:  Yes.

13          THE COURT:  Which makes paragraph 5(b) kind of

14  redundant, doesn't it?

15          MS. HECTOR:  Well, paragraph 5(b) refers to the

16  government taking no position as to where within the

17  recommended sentencing range and I was going to point Your

18  Honor to page four.

19          MR. MCMAHON:  Actually 5(b) is changed.  That

20  language changed.

21          MS. HECTOR:  Yes.

22          MR. MCMAHON:  It used to say, "where within the

23  guideline range found by the Court."  Now it says, "takes no

24  position where within the recommended sentencing range," their

25  own recommended sentencing range.

1          MS. HECTOR:  Referring back to --

2          MR. MCMAHON:  The 10 to 16.

3          THE COURT:  Okay.  I'm sorry.  Ms. Hector?

4          MS. HECTOR:  Sorry.  Then on page four, the only

5    changes where we track the language, the statutory language of

6    11(c)(1)(B) more closely in the top paragraph which is

7    paragraph, which is number two of page four where we say

8    pursuant to federal rule of criminal procedure 11(c)(1)(B),

9    however, the government agrees to recommend that a sentencing

10   range of 10 to 16 months of imprisonment is appropriate.

11         THE COURT:  Yes.

12         MS. HECTOR:  And then we've added paragraph three

13   which is under the statute, the court is required to advise

14   the defendant as to that paragraph by statute and so we just

15   included it in the agreement.

16         THE COURT:  Okay.  Are we ready?

17         MS. HECTOR:  Yes.

18         MR. MCMAHON:  We are ready, Your Honor.

19         THE COURT:  Would you swear Mr. Romanello.

20         THE CLERK:  Please raise your right hand.

21         (Defendant sworn.)

22         THE CLERK:  Could you please state your name for the

23   record?

24         THE DEFENDANT:  Anthony John Romanello.

25         THE CLERK:  Thank you.

Proceeding                                    7

1          THE COURT:  Mr. Romanello, you just swore to tell

2    the truth so everything you are going to say to me this

3    morning in answer to questions that I'll be asking you and any

4    other statement you may make this morning should be truthful.

5          Are you having trouble hearing me still or do you

6    have hearing aids?

7          THE DEFENDANT:  Yeah, I have both of them in.

8          THE COURT:  So I've said to you, Mr. Romanello, that

9    having sworn to tell the truth, everything you are going to

10   say to me this morning should be truthful because if you tell

11   a lie after you swear to tell the truth, you may be committing

12   a crime.

13         Do you understand that?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  How old are you?

16         THE DEFENDANT:  74.

17         THE COURT:  How far have you gone in school?  How

18   much education have you had?

19         THE DEFENDANT:  Third term high school.

20         THE COURT:  Are you currently being treated by a

21   doctor?

22         THE DEFENDANT:  Yes.

23         THE COURT:  What are you being treated for?

24         THE DEFENDANT:  High blood pressure and hepatitis C.

25         THE COURT:  And you are taking medicines for those

Proceeding                                    8

1    illnesses?

2            THE DEFENDANT:  Yes.  Yes.  Blood pressure pill and

3    interferon.

4            THE COURT:  And do those medicines interfere in any

5    way with your understanding of what's going on about you?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  Have you ever been hospitalized or

8    treated for any mental or emotional illness?

9            THE DEFENDANT:  No, Your Honor.

10           THE COURT:  You are satisfied with the

11   representation you have been receiving from Mr. McMahon and

12   Mr. Macri?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  Do you understand why you are here this

15   morning?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  You understand everything I have said to

18   you so far?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Mr. McMahon, do you have any questions

21   about Mr. Romanello's competence to participate in these

22   proceedings?

23           MR. MCMAHON:  No, Your Honor.

24           THE COURT:  I will make a finding to that effect.

25           Mr. Romanello, I am told that you are going to plead

CMH     OCR     RMR     CRR     FCRR

Proceeding                                                    9

1   to a charge of racketeering conspiracy.  The charge

2   incorporates a number of paragraphs which describe the

3   Genovese family as an enterprise which I'll get to shortly.

4            You have discussed all that and gone over all that

5   with Mr. McMahon?

6            And the Genovese family, family of persons who are

7   associated together in some way for the purpose of furthering

8   the objectives of that family or enterprise by committing a

9   series of crimes and it has a structure, it has a boss and an

10  underboss and consigliere and members and associates.

11           You've gone through all that, you're familiar with

12  that from Mr. McMahon?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  The charge to which I understand you're

15  agreeing to plead guilty reads that, the introductory

16  paragraphs which describe the operation and existence of the

17  Genovese family are incorporated in this charge, and it reads

18  that in or about and between January 1990 and July of 2006,

19  both dates being approximate and inclusive, within the Eastern

20  District of New York and elsewhere, you, who are also known as

21  "Rom," together with others being a person employed by and

22  associated with the Genovese crime family, an enterprise that

23  engaged in the activities that affected interstate commerce,

24  knowingly and intentionally conspired to violate Title 18

25  Section 1962(c) of the United States Code.

Proceeding                                              10

1          That is, you conspired to conduct and participate

2    directly and indirectly in the conduct of the affairs of that

3    enterprise through a pattern of racketeering activity as that

4    term is defined in the statute consisting of the racketeering

5    acts set out below, and you agree that a conspirator would

6    commit at least two acts of racketeering activity in the

7    conduct of the affairs of the enterprise.

8          Now, the Racketeering Acts which you've agreed to

9    plead to are Racketeering Acts Two and Three.

10         Racketeering Act Two provides that you agree to the

11   commission of a violation of the federal gambling law in that

12   in or about 1999, within the Eastern District of New York and

13   elsewhere, you, together with others, knowingly and

14   intentionally conducted, finance, manage, supervise, directed

15   and owned all or part of an illegal gambling business

16   involving policy and bookmaking which operated in violation of

17   the laws of New York State, namely, the New York Penal Law

18   Section 225.05, 225.10, and 20.00, which involved five or more

19   people who conducted, financed, managed, supervised, directed

20   and owned all or part of that business which remained in

21   substantially continuous operation for a period of more than

22   thirty days and had a gross revenue of at least $2,000 in any

23   single day in violation of Title 18, Section 1955 of the

24   United States Code.

25         And Racketeering Act Three --

Proceeding                                    11

1          MR. MCMAHON:  Your Honor, excuse me.  I hate to

2     interrupt, but we were going to plead to Subsection C which is

3     the state gambling law part of that Racketeering Act Two, the

4     bookmaking.

5          THE COURT:  The other racketeering acts with which

6     you're charged is the State gambling law, bookmaking, which

7     charges that in or about 1999, within the Eastern District of

8     New York and elsewhere, you, together with others, knowingly

9     and intentionally advanced and profited from unlawful gambling

10    activity by engaging in bookmaking to the extent that you

11    received and accepted in any one day more than five bets

12    totaling more than $5,000 in violation of the New York Penal

13    Law.

14          And Racketeering Act Three which alleges that in or

15    about June of 1999, within the Eastern District of New York

16    and elsewhere, you, together with others, knowingly and

17    intentionally conspired to steal property by extortion and

18    that you and others agreed to obtain money by compelling and

19    inducing John Doe No. 2, an individual whose identity is known

20    to the grand jury, to deliver such property by instilling in

21    him a fear that if the property were not delivered, you and

22    others would cause physical injury to John Doe No. 2 in the

23    future in violation of the sections of the New York Penal Law

24    and United States Code.

25          Before I can accept your plea, Mr. Romanello, the

Proceeding                                              12

1   law requires me to make sure that you understand the variety

2   of rights that you have as you stand here this morning.

3            Are you having trouble hearing me?

4            THE DEFENDANT:  No.  No, Your Honor.

5            THE COURT:  If there's anything that I explain to

6   you that you don't understand, don't hesitate to tell me and

7   let Mr. McMahon explain it perhaps more clearly than I did.

8            The first thing that I want to make sure that you

9   understand is that just as you have said to me in the past

10  that you're not guilty of these charges, when I ask you how

11  you plea, you can continue to say to me this morning that

12  you're not guilty of the crimes with which you are charged,

13  and if you continue to say that to me, as you have a perfect

14  right to do, there will be a trial.  It will start on Tuesday

15  of next week.  You'll be represented by your lawyer in that

16  trial.  It will be a trial before a jury.  It will be a public

17  trial.  And at that trial, you'd be presumed innocent of these

18  crimes with which you are charged.

19           What that means, Mr. Romanello, is that you wouldn't

20  have to prove that you didn't commit these crimes.  You

21  wouldn't have to prove anything.  The government would have to

22  prove that you did commit them and the government would have

23  to prove it so that a unanimous jury of twelve people would be

24  satisfied beyond a reasonable doubt that you committed those

25  crimes.

Proceeding                                           13

1          Do you understand that?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  At that trial, you would have a right to

4    confront your accusers which means you would have the right to

5    see and face the witnesses against you and your lawyer would

6    have the right to cross-examine those persons for you and

7    you'd have the right to object to any evidence which he

8    believes the Court shouldn't hear.

9          Do you understand that?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  And at that trial too you could, if you

12   wanted to, testify for yourself under oath.  You could have

13   witnesses summoned here to testify for you.  You could offer

14   such evidence at your trial as you think might be useful to

15   you, but you needn't do any of those things.

16         You have a right to remain silent at your trial, say

17   nothing and do nothing, and if you did remain silent at your

18   trial and did nothing else, I would instruct the jury that

19   they must not infer that you're guilty because you have not

20   testified on your own behalf and offered any evidence on your

21   own behalf.  I would instruct the jury that you're enjoying

22   the right which the Constitution of the United States gives

23   all persons which is known as the privilege against

24   self-incrimination.

25         What that means, in more homely terms,

Proceeding                                          14

1   Mr. Romanello, is that a person can't be forced to convict

2   himself out of the words of his own mouth.  Do you understand

3   all of that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  If you plead guilty this morning and if

6   I accept your plea, you'll be giving up all those rights that

7   I've just explained to you.  There will not be a trial and the

8   government will not be required to prove that you're guilty of

9   the crimes to which I'm told you wish to plea.  You will not

10  have had the opportunity to see who the witnesses against you

11  would be.  A finding of guilt will be entered this morning and

12  you'll be sentenced on another day.

13             Do you understand all that?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  If you were listening very carefully,

16  Mr. Romanello, you would have heard me say a minute ago that

17  if you plead guilty and if I accept your plea.

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  What I had in mind when I said that was

20  the requirement which the law imposes upon me to make sure

21  that I'm accepting a plea of guilty from a person who is and

22  not from an innocent person.

23             So, I'm going to ask you some questions about the

24  crimes with which you are charged, and to the extent that you

25  answer them, you may be convicting yourself out of the words

Proceeding                                          15

1   of your own mouth.  You may be giving up that right to remain

2   silent, that privilege against self-incrimination that I've

3   explained to you a few minutes ago.

4           Do you understand all of that?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Did Mr. McMahon explain to you that the

7   statutory penalty for the crime to which you intend to plead

8   guilty is imprisonment up to 20 years?  Did he tell you that?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And did he also tell you that in

11  addition to any term of imprisonment, the Court could add a

12  period of supervised release of up to three years?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And did Mr. McMahon explain supervised

15  release to you?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And you believe you understand it?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Did he also tell you that the Court had

20  imposed a fine which is either $250,000 or twice the gross

21  profits of the enterprise, the crime with which you're

22  charged, whichever is greater?  Did he tell you that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Is restitution applicable here?

25          MS. HECTOR:  Yes.  It's in an amount to be

Proceeding                                    16

1   determined by the Court.

2          THE COURT:  Restitution with respect to what,

3   gambling offense?

4          MS. HECTOR:  The gambling offense and the victim of

5   the state extortion.

6          THE COURT:  Do you know what restitution means,

7   Mr. Romanello?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Did Mr. McMahon explain it to you?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  That's mandatory, and I don't know what

12  the amount of restitution you'll be required to make is as I

13  talk to you, but that will be determined between now and the

14  time that you're sentenced.

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  And did he also tell you that regardless

17  of what the sentence is, you will be required to pay a special

18  assessment of $100 that is mandatory?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Did Mr. McMahon talk to you or

21  Mr. Macri --

22         Mr. Macri, you will excuse me if I do not include

23  you in every reference to Mr. Romanello's counsel, but you can

24  assume when I say Mr. McMahon, I am inferentially including

25  you.

```
               Proceeding                    17
```

1          Did Mr. McMahon explain to you something that he

2    referred to as guidelines?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And he told you that there used to be a

5    time when the Court was required to impose a sentence in

6    accordance with a book known as the United States Sentencing

7    Guidelines Directive?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And did he tell you that since about

10   1987 or, I'm sorry, since about sometime in January of about

11   four years ago, the guidelines became discretionary?  They're

12   not mandatory but I have to consult them.  Did he tell you

13   that?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And there's been some prediction as to

16   what the guidelines would be at the moment.  I'm going to ask

17   whether you understood that the prediction, the estimated

18   assumption of the guideline advice would be somewhere between

19   27 and 33 months.

20         I just want to make sure you understand that

21   whatever it is you were told about, that is not binding on me.

22   But I also see that in this plea agreement, your plea is going

23   to be pursuant to a section of the law, Federal Rules of

24   Criminal Procedure, which says, in effect, that the government

25   will recommend and agree that it won't oppose a request that

Proceeding                                    18

1    you're making, that is, a sentence of somewhere between 10 and

2    16 months is appropriate.

3            I want to make sure you understand that that

4    agreement is not binding on me.  For whatever reason may be

5    sufficient unto me, you have no right to withdraw your plea of

6    guilty if I, the Court, doesn't follow that recommendation.

7            Do you understand what that means?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Mr. McMahon explained all that to you?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Mr. McMahon, you've gone over that?

12           MR. MCMAHON:  I have, Judge.

13           THE COURT:  The reason I ask is Mr. Romanello is

14   looking at you for some assurance.

15           MR. MCMAHON:  Yes, Judge.

16           THE COURT:  As to what 11(c)(1)(B) is about.  He

17   understands that?

18           MR. MCMAHON:  Yes.  He understands Your Honor can

19   sentence him anywhere from zero to 20 years.

20           THE COURT:  Okay.  I suppose I should also tell you,

21   Mr. Romanello, that whatever it is that you were told the

22   guidelines advice may be, it's not binding on me.  In any

23   event, the Court can impose a sentence either below or above

24   whatever the guideline advice might be in an appropriate case.

25           You've been through all that with Mr. McMahon, yes?

CMH     OCR     RMR     CRR     FCRR

Proceeding                                    19

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you have any questions about anything

3     I've explained to you so far about the guidelines?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Mr. McMahon, do you have any reason as

6     to why Mr. Romanello shouldn't plead to Count One,

7     Racketeering Acts Two C, was it, and 3?

8          MR. MCMAHON:  No, Your Honor.

9          THE COURT:  Mr. Romanello, how do you plead to the

10    crimes that I've read to you and that you are charged with?

11    Do you plead guilty or not guilty?

12         THE DEFENDANT:  I plead guilty.

13         THE COURT:  Is anybody forcing you to say that?

14         THE DEFENDANT:  No, Your Honor.

15         THE COURT:  You are telling me that voluntarily?

16         THE DEFENDANT:  No, Your Honor.

17         THE COURT:  Yes, you are telling me that

18    voluntarily?

19         THE DEFENDANT:  Voluntarily, yes.

20         THE COURT:  And you have entered into one agreement

21    with the government in connection with that plea, plea

22    agreement, which I understand you have signed here just a few

23    minutes ago, is that right?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  And you have gone over that agreement

Proceeding                                      20

1    with Mr. McMahon carefully?

2             THE DEFENDANT:  Yes, Your Honor.

3             THE COURT:  I just want to make sure that you

4    understand one or two paragraphs of the agreement.

5             Would you like me to go over the entire agreement

6    with you?

7             THE DEFENDANT:  No, Your Honor.

8             THE COURT:  I want to make sure you understand that

9    in paragraph four, you have agreed that you will not appeal a

10   sentence which I may impose if the sentence is not more than

11   24 months.  Do you understand what that means?

12            THE DEFENDANT:  Yes, Your Honor.

13            THE COURT:  And do you know what it means to give up

14   your right to appeal?

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  Are you giving up that right

17   voluntarily?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  And that paragraph also says that you

20   have agreed that you won't file a petition pursuant to what is

21   referred to there as 28, and Section 2255 of the United States

22   Code.

23            Did Mr. McMahon discuss all that with you?

24            THE DEFENDANT:  Yes, Your Honor.

25            THE COURT:  And what that means, in essence,

```
                         Proceeding                    21
```

1   Mr. Romanello, is that you're not going to challenge the

2   validity of the proceedings beginning with the day you were

3   arrested, arraigned, up until today.  You won't challenge the

4   validity of all of that?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  Okay?  And you are giving up that right

7   voluntarily as well?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  And then in paragraph 5, the government

10  agreed that it won't bring any further criminal charges

11  against you for your participation in the extortionate

12  collection of credit conspiracy sometime between January of

13  1990 and December of 1999, and they won't bring further

14  criminal charges against you with respect to Racketeering Acts

15  Two and Three.

16           The law requires me to approve that part of the

17  agreement.  I'll reserve that part to the day I impose

18  sentence.  If I disagree with that, I'll permit you to

19  withdraw your plea.

20           Do you understand that?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  Do you have a copy of that agreement

23  before you?  I think it was handed up to me.

24           MR. MCMAHON:  Yes, Judge, we do have a copy.

25           THE COURT:  Mr. Romanello, I want you to look at

Proceeding 22

1  this last page and tell me if you recognize any signature on

2  this page.

3          THE DEFENDANT:  That's my signature, Your Honor.

4          THE COURT:  And just above your signature,

5  Mr. Romanello, you said you've read the entire agreement, you

6  discussed it with your lawyer, you understand all of its terms

7  and you've entered into that agreement knowingly.

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  You certified to that when you signed

10 it, correct?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Now, if you had gone to trial,

13 Mr. Romanello, the government would have had to prove a number

14 of things, and I'm going to go over them with you and I'm

15 going to ask you a number of questions with respect to those.

16         Before I do that, you are charged with racketeering

17 conspiracy.  A conspiracy, Mr. Romanello, is essentially an

18 agreement.  It's an agreement between two people, two or more

19 people, you being one of them, to commit a crime.

20         If the government is to succeed in proving, had you

21 gone to trial, that you are guilty of the crime of conspiracy,

22 they would have had to prove two or three things which are

23 essentially that there was a conspiracy, that is, you agreed,

24 with one or more people, to commit a crime.  The second thing

25 they would have to prove is that you were a party to that

1  agreement knowingly, voluntarily, understanding what it was

2  you were agreeing to.

3          When I say the government would have to prove there

4  was an agreement between you and others to commit a crime, I

5  don't mean to convey the idea that the government would have

6  to prove that you entered into a written agreement with other

7  people.  It would be enough if they satisfied the jury that

8  you and one or more others had a meeting of the minds, a

9  common understanding, that you were going to commit a crime,

10 and depending upon the conspiracy you're charged with, it may

11 be the government would also have to prove that you or one of

12 your co-conspirators committed what is referred to as an overt

13 act, took some step toward the accomplishment of the objective

14 of a conspiracy.  It's what a conspiracy is all about.

15         Do you understand that or would you like to go over

16 that with you.

17         THE DEFENDANT:  No, I understand it, Your Honor.

18         THE COURT:  Now, with respect to Count One, the

19 racketeering conspiracy, the government would have to prove a

20 variety of things.

21         The government would have to prove, first, the

22 existence of an enterprise.  An enterprise is defined by the

23 statute, and it is essentially a group of people who are

24 associated together, associated in fact, and they're

25 associated for the purpose of accomplishing some common goal.

Proceeding                                          24

1          In this case, the government is charging that the

2    enterprise, the group of people who are associated together in

3    fact was the Genovese organized crime family.  And the

4    Genovese organized crime family is a family or a group of

5    persons associated in fact to accomplish what is essentially

6    making money for its members and associates and making money

7    for its members and associates which is the common goal of

8    that enterprise.

9          I'm going to be referring to the enterprise as I go

10   through what it is the government would have to prove, and

11   when I say the enterprise, what I'm referring to,

12   Mr. Romanello --

13              THE DEFENDANT:  Yes, Your Honor.

14              THE COURT:  -- is essentially the Genovese family

15   which has been charged as being the enterprise.

16          The government would have to prove that between

17   January of 1990 and July of 2006 within the Eastern District

18   of New York -- the Eastern District of New York, I'm sure

19   Mr. McMahon told you, describes the geographic area over which

20   this Court has jurisdiction.  The Eastern District of New York

21   includes all of Brooklyn and Queens and Staten Island and

22   Nassau and Suffolk counties.

23          So, between January of 1990 and July of 2006, the

24   government would have to prove that you were associated with

25   that enterprise.

Proceeding                                    25

1         The government would have to prove that that

2    enterprise, the Genovese family, had an ongoing formal or

3    informal structure that was defined in the first 10 or 11

4    paragraphs of the indictment:  The boss, the underboss and

5    captains and crews and all the rest.  The government would

6    have to prove all that.

7         The government would have to prove that your

8    association with that enterprise was meaningful, that you were

9    helpful to it, you knew what it was about, you were helpful in

10   continuing and furthering the objectives of the enterprise as

11   an associate of it.

12        Finally, the government would have to prove that

13   between those dates, January of 1990 and July of 2006, you and

14   others conspired to participate in the affairs of that

15   enterprise and the affairs of that family through a pattern of

16   racketeering activity.

17        A pattern of racketeering activity, Mr. Romanello,

18   means the commission of at least two of a variety of crimes

19   which I described in the statute, crimes which are related in

20   a meaningful way to the overall existence and continuity of

21   the enterprise, and the two racketeering acts, two crimes

22   which make up a pattern of racketeering activity was the

23   gambling crime and the extortion.

24        So let me ask you, Mr. Romanello, whether you were

25   associated with what I have described and what has been

Proceeding                                      26

1   charged as being an enterprise between 1990 and 2006?

2              MR. MCMAHON:  Your Honor?

3              THE COURT:  Go ahead.

4              MR. MCMAHON:  We have prepared a written allocution.

5   I don't know whether it would be acceptable to Your Honor or

6   not, but I just advise the Court of that fact and he would be

7   prepared to state that and if there were additional questions

8   beyond that --

9              THE COURT:  Okay.  I'm familiar with the allocution.

10             MR. MCMAHON:  Would that be acceptable to Your

11  Honor?

12             THE COURT:  Pardon?

13             MR. MCMAHON:  Would that be acceptable to Your

14  Honor?

15             THE COURT:  I don't know.  I would have to hear it,

16  but the fiction that the existence of these families is

17  something which is completely in doubt and something that one

18  doesn't allocute to by virtue of the rules, I've been through

19  that I don't know how many times, Mr. McMahon, over the past

20  20 some odd years.

21             Let me ask you, Mr. Romanello.  I'm using the word

22  "enterprise."  Were you associated with that enterprise that I

23  have defined for you sometime between 1990 and 2006?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  And you were associated with it in some

Proceeding                                    27

1   meaningful way?

2          And I think that the existence of that enterprise as

3   affecting interstate commerce is something which, I take it,

4   the defense would not contest.

5          MR. MCMAHON:  No, Judge.  We concede that.

6          THE COURT:  And Mr. Romanello, I want to ask you

7   whether you and others, that is, you and one or more other

8   people conspired, had an agreement, that at least one of you

9   would commit two of the racketeering acts which I described.

10         Did you and one or more others have an agreement, a

11  meeting of the minds that you would commit the crime of

12  bookmaking?  Yes or no.

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  That is, between or in or about 1999,

15  somewhere in the Eastern District, you and others knowingly

16  and intentionally were engaged in bookmaking which was

17  unlawful according to the laws of the State of New York to the

18  extent that you intended or conspired to receive and accept in

19  any one day more than five bets totaling more than $5,000.

20         Is that true?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  And with respect to Racketeering Act

23  Three, is it also correct that you and one or more others

24  agreed that at least one of you would commit the crime of

25  extortion, namely, you agreed that you were going to get money

Proceeding                                          28

1  from somebody who was known to the grand jury as John Doe No.

2  2 and you agreed that if he didn't pay, turn over, give you

3  the money that you were requiring him to give you, you

4  instilled in him the fear that if he didn't pay what he was

5  supposed to pay, he was going to be suffering some physical

6  injury?

7          You or one or more others agreed to that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And that happened in the Eastern

10  District of New York as well?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Is there anything further?

13          MS. HECTOR:  Just one second, Your Honor.

14          THE COURT:  Let me start with Mr. McMahon.

15          Is that allocution satisfactory to you, Mr. McMahon?

16  Is there anything I've forgotten or left out?

17          MR. MCMAHON:  Well, the government may ask for

18  specificity on an overt act, and I would just point to the

19  June 5th conversation from the social club which makes

20  reference to it, where somebody was going to get punched in

21  the head.

22          THE COURT:  With respect to Racketeering Act Three?

23          MR. MCMAHON:  Yes, Judge.  That would suffice as an

24  overt act.

25          THE COURT:  The State of New York defines an overt

Proceeding                                    29

1   act in 55 or 59.  The federal statute doesn't require an overt

2   act as far as the conspiracy law does.  Is that what it is you

3   are going to call to my attention?

4            MS. HECTOR:  Yes, it is, Your Honor.

5            THE COURT:  So there was an overt act.  You and

6   others had a conversation with respect to what would happen if

7   John Doe No. 2, that John Doe No. 2 know and become fearful of

8   what might happen if he didn't turn over the money.  Is that

9   right?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Is there anything else?

12           MR. MCMAHON:  Nothing, judge.

13           MS. HECTOR:  No, Your Honor.

14           THE COURT:  I've covered it all?

15           MS. MACE:  Yes.

16           THE COURT:  Mr. Romanello has been fully advised of

17  his rights.  I understand he understood them.  And with that

18  understanding, he knowingly and voluntarily pleaded guilty to

19  Count One and Racketeering Acts Two C and Three of an

20  indictment which is number 10-CR-929(S-1) and there is a

21  factual basis for it.  I'll accept that.

22           THE CLERK:  April 13th at 10:30 a.m. for sentencing.

23           MR. MCMAHON:  That's fine, Your Honor.

24           Judge, I have one slight request to make.

25           As Your Honor knows, there was some, there had

Proceeding                                    30

1    earlier been set by a Magistrate a bail condition of no

2    association which is common.

3              At sentencing, we may address that issue with Your

4    Honor, both the government and the defense, but for purposes

5    of between now and the time of sentencing, there are two

6    individuals that Mr. Romanello has been friends with and their

7    wives and family are friends for 50 years.

8              I'd like to have the opportunity to have him

9    associate with them not for crimes or any other purpose, but

10   simply to have the association bail condition waived with

11   respect to two individuals between now and April 13th.

12             .  The two individuals are Anthony Federici and

13   Junior Santiola, both of whom he grew up with and both of whom

14   he has known for 50 years.

15             MS. HECTOR:  We have no objection to that.

16             THE COURT:  So ordered.

17             MR. MCMAHON:  Thank you, Judge.

18             THE COURT:  Anything else?

19             MR. MCMAHON:  That's it, Your Honor.

20             THE COURT:  Thank you, Mr. McMahon.

21             Anything else?

22             MS. HECTOR:  No, Your Honor.  Thank you.

23             (Matter concluded.)

24

25