EAG:MKM
F. # 2010R02047

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                                                      Docket No.  10–CR-929 (ILG)

ANTHONY ROMANELLO,

               Defendant.

- - - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANT'S MOTION FOR EARLY TERMINATION OF PROBATION

                                               KELLY T. CURRIE
                                               ACTING UNITED STATES ATTORNEY
                                               Eastern District of New York
                                               271 Cadman Plaza East
                                               Brooklyn, New York 11201

Jack Dennehy
Amanda Hector
M. Kristin Mace
Assistant U.S. Attorneys
    (Of Counsel)

INTRODUCTION

On July 9, 2015, defendant Anthony Romanello filed a motion for early termination of probation. (Docket Nos. 96-97 ("Def. Mot.").) In his motion, the defendant did not identify anything other than merely being compliant thus far with the terms of his probation, which is not a proper basis for the requested modification. Accordingly, the motion should be denied. The Probation Department, by Senior U.S. Probation Officer Dennis Stickley, has indicated that it joins in the government's opposition to the defendant's motion.

FACTUAL AND PROCEDURAL HISTORY

I. The Indictment

On December 1, 2010, a grand jury in the Eastern District of New York returned a sealed indictment charging the defendant Anthony Romanello with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), in connection with his membership in the Genovese organized crime family of La Cosa Nostra (the "Genovese family"), a violent criminal enterprise that engages in a litany of crimes, including murder and assault, and crimes intended to obstruct justice. The indictment was unsealed on December 8, 2010, the date on which the defendant was arrested. On June 8, 2011, the grand jury returned a superseding indictment ("Indictment"), charging the defendant with (1) racketeering conspiracy from January 1990 to July 2006, in violation of 18 U.S.C. § 1962(d) (Count One), and (2) using, carrying and possessing a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Two). The crime of violence alleged is the racketeering conspiracy charged in Count One, which was alleged to have been committed through a pattern of racketeering activity consisting of three predicate acts.

A. <u>Extortionate Collection of Credit</u>

First, the Indictment alleged that, in the 1990s, Romanello participated in an extortionate collection of credit conspiracy, in violation of 18 U.S.C. § 894(a)(1). Specifically, John Doe #1, then an associate of the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family"), incurred a gambling debt. After John Doe #1 fell behind making payments on the debt, he asked a Bonanno family member for assistance in negotiating a resolution from Anthony "Tough Tony" Federici, a member of the Genovese family who controlled the gambling operation through which John Doe #1 incurred the debt and to whom Romanello reported. The Bonanno family member thereafter negotiated a payment plan with Federici and the defendant, and agreed that the Bonanno family member would deliver payments to the defendant at his social club located at 107-24 Corona Avenue in Corona, New York (the "Corona Avenue Club").

B. <u>Illegal Gambling</u>

Second, the Indictment alleged that, in the 1990s, the defendant, together with other members and associates of the Genovese crime family, operated an illegal gambling business at the Corona Avenue Club, in violation of 18 U.S.C. § 1955(a) and New York Penal Law Sections 225.10(1), (2) and 20.00. Specifically, the defendant and others received bets, collected losses and paid out winnings on bets placed on sporting events, including horse races, and numbers/policy games.

C. <u>Extortion Conspiracy</u>

Third, the Indictment alleged that, in June 1999, the defendant and others agreed to engage in violence to collect a debt from John Doe #2, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i) and 105.10. The defendant was intercepted

2

on a court-authorized bug at the Corona Avenue Club, explaining the scheme to his coconspirators:

> So why don't I [UI] to Vito's.  We going to go to Vito's? Monday morning, we might get up early and tell that fuck, Jimmy, too.  I got to get that cocksucker.  Me, you and Jimmy might go get up early Monday.  I might come out here and meet yous right out there by Aunt Joe's house or something.  We gotta [UI].  We got to punch him around, or Jimmy's got to punch him around.  I can't let him get away with that.  Taking the money and putting the gun to his head.  [UI] the gun to his head.  We gotta get the cocksucker.  Even if we don't get the money, we gotta punch the motherfucker around [UI].  Believe you me.  I can't let him get away with that.  Look, we got to get there early Monday morning.

II.     The Defendant's Guilty Plea and Sentencing

On January 10, 2012, the defendant pleaded guilty to racketeering conspiracy and allocuted to Racketeering Acts Two and Three, illegal gambling and the extortion conspiracy.  (Jan. 10, 2012 Transcript ("Plea Tr.") at 9–11.)  Specifically, the defendant admitted to being associated with the enterprise, namely the Genovese crime family, between 1990 and 2006, and to participating in illegal gambling and conspiracy to extort John Doe #2 in relation to the enterprise.  (Id. at 26-29.)

On June 15, 2012, the defendant was sentenced by the Court.  (June 15, 2012 Transcript ("Sent. Tr.").)  Based on the calculation by the Probation Department in the Presentence Investigation Report ("PSR"), the defendant faced a sentence of incarceration of 33 to 41 months under the United States Sentencing Guidelines, based on a total offense level of 18, and a criminal history category of III.  (PSR ¶ 129.)  The Court observed that there was no serious dispute "that Mr. Romanello has been a member of the organized crime family and deriving much of his income from organized crime."  (Sent. Tr. at 13.)  However,

after weighing the factors under 18 U.S.C. § 3553(a), the Court imposed a sentence of four years' probation, including six months' home confinement and 200 hours of community service. In doing so, the Court provided the following explanation and admonition:

> The government and, I think appropriately, is agreed to [a]n 11(c)(1)(b) which is a relatively modest sentence, 10 to 16 months, given your presentation of the very seriousness of this offense. I think sufficient but not excessive will be non-incarcerat[ion] sentence on these facts and on this record as I have it. I am going to sentence Mr. Romanello to probation, to a period of four years. It is a lot longer than ten months. I don't know whether it is something that is going to resonate with you, Mr. Romanello. I understand what organized crime is about and I understand how hard it is to cut yourself loose from it and having been involved with it now for 30 years, there are times when I've felt I was an honorary member of the Gambino family, but you are 74 years old. You are not well. Put the Genovese family behind you. . . . Cut your ties with that family.
>
> \*   \*   \*
>
> I know it is a hard thing to do but I am going to direct you to keep away from people involved the in organized crime. Make up your mind that you are putting that family behind you.

(Sent. Tr. at 21-23).

Despite this clear instruction to cut his ties with members of organized crime, the defendant asked the Court for a "carve out" from the non-association condition of probation for "the owner of the Parkside" – longtime Genovese crime family member Anthony "Tough Tony" Federici. (Id. at 24.) The request was denied. (Id.)

III.   The Defendant's Motion

On July 9, 2015, the defendant filed a motion for early termination of probation, asking the Court to reduce the imposed period of probation by approximately eleven months. In his motion, the defendant claims that he "has been an exemplary supervisee and probationer, as his Probation Officer, Dennis Stickley, no doubt can attest." (Def. Mot. at 4) (internal quotations and citations omitted).

4

The government contacted Senior U.S. Probation Officer Dennis Stickley, who reported that he had not been asked by counsel for the defendant for an assessment of the defendant's period of probation, and further informed the government that the defendant "has been compliant but not exemplary." In addition, the government inquired as to whether there is anything, such as work responsibilities, that would make completion of the defendant's sentence unduly difficult or burdensome, to which Officer Stickley responded: "He's retired and hasn't expressed any difficulties with supervision." Under the terms of probation, the defendant currently reports to the Probation Office approximately once every two months and receives a home visit approximately once every 90 days.

## LEGAL STANDARD

A court may terminate a term of probation "at any time after the expiration of one year of probation. . . if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). In making such a decision, the Court may consider any relevant § 3553(a) factors, id. , as well as any "new or unforeseen circumstances." United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997).[1]

"Early termination is not warranted as a matter of course" when the defendant has merely complied with the conditions with which he is legally obligated to comply. United States v. Sheckley, 129 F.3d 114, 1997 WL 701370, at *1–2 (2d Cir. 1997) (affirming

---

[1] In Lussier, the court considered a motion for early termination of supervised release, rather than early termination of probation. The relevant language of the two governing statutes, however, is identical. Compare 18 U.S.C. § 3583(e)(1) (allowing early termination of supervised release if the court, after considering the factors in § 3553(a) "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice"), with 18 U.S.C. § 3564(c) (allowing early termination of probation if the court, after considering the factors in § 3553(a) "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice").

5

denial of a motion for early termination of supervised release where the defendant had "not demonstrated any special hardship or compelling reason to reduce his term of supervised release."); United States v. Leone, No. 02-CR-528, 2013 WL 867527 (TCP), at *2 (E.D.N.Y. Mar. 4, 2013) ("A petitioner's compliance with the conditions of his probation, however, is insufficient to warrant early termination"); United States v. Bailin, 05–CR–48–01, 2008 WL 4279521, at *1 (S.D.N.Y. Sept.18, 2008) ("Full compliance with the terms of probation, though laudable, does not constitute the type of exceptional behavior entitling a defendant to early termination."); United States v. Medina, 17 F. Supp. 2d 245, 247 (S.D.N.Y.1998) ("While [the defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule.").

A court should not disregard its original analysis of the sentencing factors at the time of sentencing. Lussier, 104 F.3d at 34–35. Rather, a modification is only available upon a determination by the Court that the sentencing goals "would be better served by a modification" as opposed to the original sentence. Id. at 35 (emphasis supplied). This will only occur "[o]ccasionally" where, for example, "new or unforeseen circumstances" that warrant modification are presented to the court. Id. at 36. Absent unforeseen or changed circumstances or problems associated with completing probation, probation should not be terminated early. See e.g., United States v. Singer, No. 08-CR-587 (SJF), 2012 WL 3062136, at *2 (E.D.N.Y. July 25, 2012) (denying defendant's request for early termination of probation because he has not demonstrated any changed circumstances or problems in completing the full term of probation).

6

ANALYSIS

In his motion, the defendant has identified nothing more than mere compliance as his claimed basis for modification of the term of probation. This, in itself, does not warrant early termination of probation. See Lussier, 104 F.3d at 34–35 (early termination should be rare and is not warranted when the defendant simply complies with the conditions with which he is legally required to comply).

Nevertheless, the defendant, citing to a case from the Eastern District of Pennsylvania, claims that being "an exemplary supervisee and probationer" can alone be a basis for early termination of probation. (Def. Mot. at 4, citing United States v. Rodriguez, 2005 WL 994606, at *1 (E.D. Pa. April 28, 2005).) Unlike the defendant in Rodriguez, however, Officer Stickley has indicated that Anthony Romanello "has been compliant but not exemplary." Even more importantly, the court in Rodriguez relied on a number of factors in reaching its decision, including the difficulties caused by probation for the defendant, who was a single mother of two young children. 2005 WL 994606, at *2. Here, the defendant has not identified any similar difficulties or new hardship caused by his probation, which requires him to visit the Probation Office approximately once every two months. In fact, the most apparent practical effect of early termination of probation would be to end the term during which the defendant cannot associate with Federici and other members and associates of the Genovese crime family.

In short, even in the absence of any known violation, the defendant has failed to demonstrate any appropriate basis for early termination of probation in this case. See Medina, 17 F. Supp. 2d at 247. In circumstances such as those presented by the defendant in his motion – where nothing identifiable has changed since his conviction – there is no reason

7

for the Court to revisit its analysis underlying the defendant's original sentence.  See Lussier, 104 F.3d at 34–35.  The defendant should be required to complete his sentence, just as other defendants must.

## CONCLUSION

For these reasons, the government, joined by the Probation Department, respectfully requests that the Court deny the defendant's motion for early termination of probation.

Dated:     Brooklyn, New York
           July 23, 2015

                                        Respectfully submitted,

                                        KELLY T. CURRIE
                                        Acting United States Attorney
                                        Eastern District of New York
                                        Brooklyn, New York 11201


                                By:     /s/ M. Kristin Mace
                                        Jack Dennehy
                                        Amanda Hector
                                        M. Kristin Mace
                                        Assistant United States Attorneys
                                        (718) 254-7000